**United States District Court**
**District of Massachusetts**

```
_____
                              )
TIMOTHY CORCORAN,             )
         Plaintiff,           )
                              )
         v.                   )     Civil Action No.
                              )     09-11468-NMG
SAXON MORTGAGE SERVICES, INC.,)
         Defendant.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Timothy Corcoran ("Corcoran"), an individual residing in Milton, Massachusetts, has brought suit against defendant Saxon Mortgage Services, Inc. ("Saxon"), a residential mortgage lender incorporated in Virginia, for various violations of state and federal law. Before the Court are 1) Defendant's motion to dismiss, 2) Defendant's motion to strike several exhibits appended to Plaintiff's opposition to Defendant's motion to dismiss and 3) Plaintiff's motion to amend the complaint to add several new claims.

**I.   Factual Background**

The plaintiff alleges that in January, 2007, he purchased a single family home located at 1056 Washington Street, Canton, Massachusetts, for approximately $430,000. In connection with that purchase, the plaintiff executed a mortgage and 30-year adjustable-rate note ("the Note") with Saxon Mortgages Services

-1-

for a principal amount of $378,250 (about 88% of the purchase price).[1]  The current balance of the mortgage is approximately $131,000.

The plaintiff claims that, at the time of the execution of the mortgage, he was not informed of the details and features of its interest rate, e.g., that it had a "floor" rate of 8.45%. The plaintiff also asserts that at the first interest-rate-change date in February, 2009, the defendant increased the interest rate by more than one percentage point (from 8.45% to 9.75%) in violation of the terms of the Note.  Finally, the plaintiff alleges that the defendant failed to provide him with requested loan documents on several occasions.

## II.  **Procedural History**

On July 21, 2009, the plaintiff filed a nine-count complaint in the Massachusetts Superior Court Department for Norfolk County, alleging : 1) breach of contract, 2) unjust enrichment, 3) violation of M.G.L. c. 93A, 4) negligence, 5) violation of the Truth in Lending Act, 6) breach of fiduciary duty, 7) predatory lending, 8) fraud and 9) breach of the covenant of good faith and fair dealing.  Plaintiff seeks damages in the amount of $207,000, plus interest, costs and attorneys' fees.

---

[1] As discussed below, although plaintiff's complaint alleges that Saxon was the original mortgagee, plaintiff later acknowledged that the lender was G.E. Money Bank and that Saxon was the servicer of the loan.

On September 3, 2009, the defendant removed the case to this
Court and on October 2, 2009, moved to dismiss all the counts
against it.  The plaintiff opposed that motion and the defendant
then moved to strike several supporting exhibits appended to the
plaintiff's opposition.  The plaintiff has also requested leave
to file an amended complaint asserting several additional federal
law claims.

On April 23, 2010, the Court convened a scheduling
conference at which it announced its tentative rulings with
respect to the various pending motions and invited oral argument
on the issues as to which it was undecided.  Having taken the
motions under advisement and conducted further research on those
issues, the Court now announces its rulings.

**III. <u>Analysis</u>**

    **A.   Defendant's Motion to Dismiss**

        **1.   Legal Standard**

To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to "state a claim to
relief that is plausible on its face." <u>Bell Atlantic Corp.</u> v.
<u>Twombly</u>, 550 U.S. 544, 570 (2007).  In considering the merits of
a motion to dismiss, the Court may look only to the facts alleged
in the pleadings, documents attached as exhibits or incorporated
by reference in the complaint and matters of which judicial
notice can be taken.  <u>Nollet</u> v. <u>Justices of the Trial Court of</u>

Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d
1127 (1st Cir. 2000).  Furthermore, the Court must accept all
factual allegations in the complaint as true and draw all
reasonable inferences in the plaintiff's favor.  Langadinos v.
American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the
facts in the complaint are sufficient to state a cause of action,
a motion to dismiss the complaint must be denied.  See Nollet, 83
F. Supp. 2d at 208.

    Although a court must accept as true all of the factual
allegations contained in a complaint, that doctrine is not,
however, applicable to legal conclusions.  Ashcroft v. Iqbal,
129 S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal
elements, supported by mere conclusory statements, do not suffice
to state a cause of action.  Id.  Accordingly, a complaint does
not state a claim for relief where the well-pled facts fail to
warrant an inference of any more than the mere possibility of
misconduct.  Id. at 1950.

> 2.   **Application**
>
>    i.   **Breach of Contract, Unjust Enrichment and
>         Breach of the Covenant of Good Faith and Fair
>         Dealing (Counts I, II and IX)**

    In Counts I, II and IX of the complaint, Corcoran alleges
that Saxon 1) breached the terms of the Note by increasing the
interest rate by more than one percent on the first change date,
2) breached the implied covenant of good faith and fair dealing

-4-

and 3) has been unjustly enriched by collecting excessive interest as a result of those breaches.  All of the plaintiff's contractually-based claims fail, however, because the Note did not prohibit the lender from increasing the interest rate from 8.45% to 9.75% at the first change date in February, 2009. Rather, it expressly permitted the lender to adjust the rate to a maximum of 11.45%.  It was only <u>after</u> the initial change date that the 1% limitation became effective.  Section 4(D) of the Note, which governs the limits on interest rate changes, states:

> The interest rate I am required to pay at the <u>first Change Date</u> will not be greater than 11.45% or less than 8.45%.  <u>Thereafter</u>, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point from the rate of interest I have been paying for the preceding six months.  My interest rate will never be greater than 14.95% or less than 8.45%.

(emphasis added).  Thus, because the increase in the rate to 9.75% was permissible under the terms of the Note, the plaintiff has not stated a claim for breach of contract, unjust enrichment or breach of the covenant of good faith and fair dealing.

### ii.  Truth in Lending Act (Count V)

The plaintiff alleges that the defendant violated the Truth in Lending Act ("TILA") because it failed to disclose all the terms of the loan and disproportionately raised the interest rate.  The defendant responds that the plaintiff's TILA claim is barred because 1) it was not brought within the one-year statute

of limitations period and 2) the loan was not for personal or family use.

TILA, 15 U.S.C. §§ 1601-1667f, requires creditors to make "clear and accurate disclosures" of the terms of consumer credit transactions, including the "annual percentage rates of interest." Belini v. Washington Mut. Bank, FA, 412 F.3d 17, 20 (1st Cir. 2005). If a creditor fails to make such disclosures, a debtor can sue for damages. 15 U.S.C. § 1640(a). The statute of limitations for bringing a TILA action is "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).[2]

Saxon contends that the date of the "occurrence of the violation" is January 17, 2007 (the date of the closing at which the defendant allegedly failed to provide the required disclosures). Plaintiff insists, however, that the relevant date is February 1, 2009, the day on which the allegedly unlawful change in his interest rate occurred. He claims that he did not discover the alleged violations until after his interest rate changed and that, before that time, he had been unaware that the disclosures had been inadequate.

After further review of the subject statute of limitations,

---

[2] The limitations period is extended to three years if the borrower has an extended right of rescission. McIntosh v. Irwin Union Bank and Trust Co., 215 F.R.D. 26, 30 (D. Mass. 2003). This extension does not, however, apply here because Corcoran neither seeks rescission nor is entitled to it. See 15 U.S.C. § 1635(e) (right of rescission does not apply where property is not the principal dwelling of the purchaser).

the Court has concluded that the defendant's contention is
correct.  Because the plaintiff's TILA claim is based on
insufficient disclosures, the limitation period runs from the
date of the transaction at which the disclosures should have been
made, i.e., on January 17, 2007.  See De Jesus-Serrano v. Sana
Inv Mortg. Bankers, 552 F. Supp. 2d 191, 194-95 (D.P.R. 2007)
(running one-year statute of limitations from date mortgage
transaction was consummated); Rodrigues v. Members Mortgage Co.,
Inc, 323 F. Supp. 2d 202, 210 (D. Mass. 2004) (same).

    Although equitable tolling can rescue a TILA claim otherwise
barred by the statute of limitations when the plaintiff has "in
some extraordinary way ... been prevented from asserting his
rights," Corcoran has not made such a showing.  See Taggart v.
Chase Bank USA, N.A., 355 Fed. Appx. 731, 732 (3rd Cir. 2009)
(equitable tolling unwarranted because plaintiff did not show
that defendants actively misled him or took extraordinary steps
to prevent him from asserting his rights); Hubbard v. Fidelity
Bank, 91 F.3d 75, 79 (9th Cir. 1996) (rejecting plaintiff's
argument that statute of limitations should be tolled until she
"discovered there were possible anomalies or errors in her loan"
because nothing prevented her from comparing the initial
disclosures to TILA's statutory requirements).  Thus, because the
plaintiff has not alleged that the defendant prevented him from
asserting his rights in any way, equitable tolling is unwarranted

and the plaintiff's TILA claim is time-barred.

Moreover, even if the plaintiff had asserted a timely TILA claim, it would still fail because the plaintiff obtained the loan for business, as opposed to residential purposes.  See 15 U.S.C. § 1603(3) (exempting from TILA "credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes").  At the time the plaintiff obtained the loan, he represented to the lender that it would be used to purchase an "investment property" and that he did not intend to occupy the premises personally.  Courts have consistently held that extensions of credit to acquire non-owner-occupied rental property are for business rather than for personal purposes.  See Lind v. New Hope Property, LLC, 2010 WL 1493003 (D.N.J. Apr. 13, 2010); Antanuos v. First Nat. Bank of Arizona, 508 F. Supp. 3d 466, 470-71 (E.D. Va. 2007).[3]  Thus, because 1) plaintiff's loan is "commercial" in nature and 2) the one-year statute of limitations on his claim has expired, his reliance on TILA is misplaced.

---

[3] The Board of Governors of the Federal Reserve System has come to the same conclusion:

> Credit extended to acquire, improve, or maintain rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes.

46 Fed. Reg. 50288, 50297 (Oct. 9, 1981) (as amended 75 Fed. Reg. 7658 (Feb. 22, 2010).

### iii. Chapter 93A (Count III)

Plaintiff's Chapter 93A claim fails because it is predicated solely on the alleged breach of contract and the Truth in Lending Act ("TILA") violation, both of which (as discussed above) will be dismissed as a matter of law.  See Shaner v. Chase Bank, U.S.A., N.A., 570 F. Supp. 2d 195, 201 (D. Mass. 2008) (plaintiff's Chapter 93A claim fails because underlying TILA claim fails).

### iv. Negligence (Count IV)

In Count IV, the plaintiff alleges that Saxon is liable for common law negligence because it owed a "duty to ensure fair dealings."  The plaintiff's negligence claim fails for two reasons.  First, Saxon does not owe the plaintiff a duty to "ensure fair dealings" because a lender owes no general duty of care to a borrower.  See, e.g., In re Fordham, 130 B.R. 632, 646 (Bankr. D. Mass. 1991); Murray v. America's Servicing Co., 2009 WL 323375, at *5 (Mass. Dist. Ct. Jan. 12, 2009).

Second, even if a duty existed, the claim is barred by the economic loss doctrine which provides that, in negligence actions, "purely economic losses are unrecoverable ... in the absence of personal injury or property damage."  See, e.g., FMR Corp. v. Boston Edison Co., 613 N.E.2d 902, 903 (Mass. 1993).  In this case, the plaintiff does not seek to recover for personal injury or property damage.  Rather, his alleged damages, the

-9-

additional costs and interest accrued on the loan, are purely economic in nature.

Thus, because the plaintiff does not sufficiently allege that 1) Saxon owed it a duty or 2) he has suffered damages other than economic loss, his claim for negligence cannot stand.

### v.   Breach of Fiduciary Duty (Count VI)

In this count, the plaintiff claims that the defendant breached its fiduciary duty by failing to "assist" him and by "taking advantage of the transaction by self dealing."  This claim also fails because, under Massachusetts law, neither a mortgage holder nor its servicer owes a fiduciary duty to a borrower.  FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 102 (1st Cir. 2009) ("the relationship between a lender and a borrower, without more, does not establish a fiduciary duty.") Although a fiduciary duty may arise when a "borrower reposes its trust and confidence in the lender," one party cannot unilaterally transform a business relationship into a fiduciary one.  Id.  Rather, the defendant must know of and accept the plaintiff's trust.  See also Broomfield v. Kotow, 212 N.E.2d 556 (Mass. 1965) ("the catalyst in such change is the defendant's knowledge of the plaintiff's reliance on him").  Given that the plaintiff does not allege that the defendant knew of or voluntarily accepted the plaintiff's reliance on its "assistance," the claim for breach of fiduciary duty fails as a

matter of law.

### vi.   Predatory Lending (Count VII)

In Count VII, the plaintiff asserts that the defendant's interest rates violated the "Commonwealth's Predatory Lending Regulations." He does not, however, refer to any particular regulation (or group of regulations), rendering the nature of his claim difficult to discern. The Court presumes that he is referring to Chapter 8 of the Code of Massachusetts Regulations, which affords the Attorney General, under the authority of Chapter 93A, the power to regulate unfair or deceptive trade practices. See 940 C.M.R. §§ 8.01-8.08. Those regulations do not, however, provide the plaintiff with a private cause of action and, as such, the plaintiff fails to state a claim for predatory lending.

### vii. Fraud (Count VIII)

The plaintiff's final claim is for fraud or intentional misrepresentation. Specifically, he alleges that the agreement was "induced by intentional misrepresentations, fraud, and deceit perpetrated by the Defendant" and that he "relied on statements made by the Defendant regarding a cap on the interest rate that was false." The defendant argues that, despite the requirements of Fed. R. Civ. P. 9(b), the plaintiff has failed to identify, with particularity, the allegedly false statements of fact underlying his claim. At a bare minimum, a plaintiff alleging

-11-

fraud must specify "the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place." Equipment & Systems for Industry, Inc. v. North meadows Const. Co., 798 N.E.2d 571, 574 (Mass. App. Ct. 2003). The plaintiff should also allege the materiality of the misrepresentation, his reliance thereon and the resulting harm. Id.

Under the relevant pleading standards, Corcoran's allegations of fraud are woefully inadequate. He does not identify with any degree of specificity: 1) the misrepresentations allegedly made by Saxon, 2) the person or persons who made them 3) when and where they took place, 4) their materiality, 5) his reliance on them or 6) the resulting harm. Nor does his memorandum explain his failure to provide those necessary elements. Instead, Corcoran formulaically recites the elements of intentional misrepresentation and states in a conclusory fashion that "no lender would have extended the loan in this fashion." Accordingly, because the complaint does not come close to complying with Fed. R. Civ. P. 9(b), the plaintiff's fraud claim cannot stand.

**B.    Defendant's Motion to Strike (Docket No. 12)**

The defendant has also moved to strike several exhibits appended to the plaintiff's opposition to the defendant's motion to dismiss on the grounds that they present new factual

allegations and extraneous information that cannot be considered on a motion to dismiss.  Specifically, the defendant objects to 1) an affidavit in which the plaintiff discusses his discovery of the alleged TILA violations and 2) a supporting exhibit showing the LIBOR index (the common benchmark for calculating interest for adjustable-rate loans) for November, 2009.

Because the allegedly improper exhibits are irrelevant to this Court's ruling on the defendant's dispositive motion, the motion to strike will be denied as moot.

### C.   Plaintiff's Motion to Amend Complaint (Docket No. 15)

Finally, the plaintiff has requested leave to file an amended complaint adding three new causes of action under 1) the Fair Credit Consumer Act 2) the Fair Credit Reporting Act ("FCRA") and 3) the Fair Debt Collection Practices Act ("FDCPA"). The plaintiff asserts that, subsequent to the filing of the complaint, he discovered that the defendant made false statements to three credit reporting agencies.  Specifically, he alleges that the defendant falsely suggested to the credit reporting agencies that the plaintiff owed it over $120,000 and neglected to report that there was a bona fide dispute regarding the loan's validity.  The plaintiff claims the defendant's false statements have tarnished his credit and made it difficult for him to obtain loans.

Although motions for leave to amend complaints are, for the

most part, liberally granted, courts are not compelled to grant them when the proposed amendments are "futile." <u>Muskat</u> v. <u>United States</u>, 554 F.3d 183, 196 (1st Cir. 2009) ("futility is a sufficient basis for denying leave to file an amended complaint").  For the reasons expressed below, the Court will deny the plaintiff's motion with respect to the first two claims (violation of the Fair Credit Consumer Act and the FCRA), but allow the plaintiff to file an amended complaint asserting a single cause of action under the FDCPA.

The plaintiff's first proposed claim (violation of the Fair Consumer Credit Act), is futile because there is no such statute. Enough said.

The second proposed cause of action (violation of the FCRA) is also futile.  The FCRA, 15 U.S.C. §§ 1681-1681x, imposes an elaborate regulatory scheme upon the commercial furnishers of information to credit reporting agencies.  It provides for enforcement of most of its provisions by federal agencies, not individual citizens.  <u>See Chiang</u> v. <u>Verizon New England</u>, 595 F.3d 26, 34 (1st Cir. 2010).  Specifically, Congress limited furnishers' liability by prohibiting private suits for violations of § 1681s-2(a), which prohibits a person from

> furnish[ing] any information relating to a consumer to
> any consumer reporting agency if the person knows or
> has reasonable cause to believe that the information is
> inaccurate.

<u>Id.</u> Although the Act also creates a private cause of action,

such an action is triggered only by violations of a separate part
of the statute (§ 1681s-2(b)) that implicates a furnisher's duty
to investigate a dispute over the accuracy of furnished
information.

Although the plaintiff does not specify the particular
section of the FCRA that he invokes, he alleges that the
defendant falsely reported that his loan was in default but does
not implicate any of the defendant's investigatory duties.  As
such, his claim will be construed as an alleged violation of
§ 1681s-2(a) which, as discussed above, creates no private cause
of action and cannot stand.

The plaintiff's final proposed cause of action alleges that
the defendant violated the FDCPA by inaccurately reporting his
debt to the credit bureaus, using deceptive means to collect upon
his debt and failing to provide essential loan documents.  The
FDCPA prohibits debt collectors from making false or misleading
statements and from engaging in abusive and unfair practices.
See 15 U.S.C. §§ 1692-1692p.  The defendant insists that, given
the plaintiff's default, its reporting of such was entirely
accurate and, accordingly, the plaintiff's FDCPA claim is
untenable.

Defendant's argument here falls short.  Although defendant's
reporting that the plaintiff was in default was narrowly
accurate, it was not a full disclosure.  The plaintiff's proposed

-15-

claim alleges that, in reporting the default, the defendant failed to disclose that there was a bonafide dispute regarding the underlying validity of the loan.  Assuming that factual allegation is true, the Court finds that the putative claim would not be futile and will allow the plaintiff to file an amended complaint stating such a claim.


**ORDER**

In accordance with the foregoing,

1)    Defendant's Motion to Dismiss (Docket No. 6) is **ALLOWED**;

2)    Defendant's Motion to Strike (Docket No. 12) is **DENIED** as moot; and

3)    Plaintiff's Motion for Leave to Amend Complaint (Docket No. 15) is, with respect to proposed Counts IX and X, **DENIED,** but, with respect to proposed Count VIII, **ALLOWED.**


**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge
Dated May 24, 2010